**In the Interest of E.S.C., E.J.E., I.K.C., and I.C., Children.**

No. 05–07–01662–CV.

Court of Appeals of Texas, Dallas.

June 15, 2009.

472

Katherine Anne Ferguson, Greenville, TX, for Ad Litem.

Tina M. Hall, Law Offices of Tina M. Hall, PLLC, Terrell, TX, for Appellant.

Jessica Layne Edwards, Assistant District Atty., Greenville, TX, Michael C. Shulman, Texas Department of Family and Protective Services, Austin, TX, for Appellee.

Before Justices MOSELEY, RICHTER, and FRANCIS.

## OPINION

Opinion by Justice MOSELEY.

After a bench trial, the trial court terminated the parental rights of N.A.R. (Mother) and four alleged fathers to E.S.C., E.J.E., I.K.C., and I.C., and appointed the Texas Department of Family and Protective Services (Department) as sole managing conservator of the children. Only Mother appeals. In three points of error, she contends the evidence is legally and factually insufficient to support: (a) termination of her parental rights under family code section 161.001(1)(O); (b) a finding that termination of her parental rights is in the best interest of the children; and (c) a finding that appointment of the Department as sole managing conservator is in the best interest of the children. For the

reasons discussed below, we overrule her points of error and affirm the trial court's order.

## BACKGROUND

The Department received a priority referral alleging neglectful supervision of the children by Mother on April 28, 2006. According to the affidavit attached to the Department's petition, Department caseworker Ozie Knoten interviewed Mother and her MHMR caseworker on April 28, 2006. The affidavit indicates Mother was diagnosed with bipolar disorder and her symptoms had intensified, requiring hospitalization. Mother was experiencing severe depression, auditory and visual hallucinations, and "having suicidal, homicidal ideations." Mother was the primary caretaker for the children and no one was available to supervise or care for the children while she was hospitalized. Mother told Knoten her family members were evacuees from hurricane Katrina and that her husband had walked out on the family several weeks before. Mother said she had no current address, but thought she may be living in Dallas. Mother indicated her husband was not the biological father of any of her children. She also said she had two other children, one living with his maternal grandmother and the other living with his biological father, but she did not know where either resided.

The MHMR caseworker told Knoten that after Mother's discharge from the hospital, she would be admitted to a state hospital for more intensive services. Mother denied having any family or friends able to take possession of the children. Knoten concluded there appeared to be no other options for the children's care, it was unknown how long Mother would require mental health treatment, and she was currently unable to parent her children. Based on this information, Kno-

ten determined the children were in imminent danger and they were removed under the emergency removal procedures.

The Department filed a suit affecting the parent-child relationship, seeking conservatorship of the children and termination of the Mother's parental rights if reunification could not be achieved. The petition also sought termination of the parental rights of the alleged fathers of each of the children. On May 12, 2006, the court issued a temporary order designating the Department as temporary managing conservator of the children. The order stated that to obtain the return of the children, Mother was to comply with each requirement set out in the Department's original, or any amended, service plan while the suit was pending. The Department filed the service plan with the court in June of 2006. The plan required, among other things, that Mother attend parenting classes, homemaker classes, marital therapy, group sessions, visitation with her children, and that Mother undergo a psychological evaluation.

The case was tried to the court in October, 2007. The evidence showed that because Mother had no means of transportation, the Department provided individual parenting classes and transportation to and from visitations with the children. However, Mother did not attend all of the individual parenting classes or visitations. Observations of the visitations Mother did attend indicated lack of ability to give attention to the children and respond to their needs. Mother also did not attend marital therapy, homemaker classes, or group therapy, and did not notify the Department of changes in address. Mother did submit to a psychological evaluation. Additionally, the court heard evidence on the physical and emotional states and needs of the children as well as Mother.

Following the hearing, the trial court ordered termination of Mother's parental rights and appointed the Department permanent joint managing conservators of the children. Mother appeals.

## STANDARD OF REVIEW

In reviewing the legal sufficiency of the evidence to support a termination finding, we look at all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction about the truth of the matter on which the Department bears the burden of proof. *In re J.L.*, 163 S.W.3d 79, 84–85 (Tex.2005); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex.2002); *Wilson v. State*, 116 S.W.3d 923, 928 (Tex.App.-Dallas 2003, no pet.). We assume that the factfinder resolved any disputed facts in favor of its finding, if a reasonable factfinder could so do, and disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *J.F.C.*, 96 S.W.3d at 266. We do not, however, disregard undisputed evidence that does not support the finding. *Id.*

In reviewing the factual sufficiency of the evidence, we must give "due consideration" to any evidence the factfinder could reasonably have found to be clear and convincing. *Id.* (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002)). We must consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *Id.* If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## APPLICABLE LAW

Before parental rights can be involuntarily terminated, the trier of fact must find by clear and convincing evidence that: (1) the parent has committed one of the enumerated statutory grounds, and (2) termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001 (Vernon 2008). The trial court was required to find only one of the statutory grounds to be true, as well as find that the termination was in the children's best interest in order to terminate Mother's parental rights. *See Wilson v. State*, 116 S.W.3d 923, 928 (Tex.App.-Dallas 2003, no pet.). Here, the trial court terminated Mother's parental rights under section 161.001(1)(O) of the family code.

A trial court may terminate a parent's parental rights if the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the . . . conservatorship of the Department . . . for not less than nine months as a result of the child's removal from the parent under chapter 262 for the abuse or neglect of the child." TEX. FAM.CODE ANN. § 161.001(1)(O).

## APPLICATION

### 1. Grounds for Termination

Mother argues in her first issue that the temporary order did not specifically establish the actions necessary for her to obtain the return of the children. However, the temporary order specifically notified her that the "actions required of [her] below are necessary to obtain return of the children." One of the actions required below was that she "comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit." Thus, the action required for Mother to obtain return of the children was to comply with the Department's service plan.

Mother cites no authority that an order establishing this action is insufficient under section 161.001(1)(O) and we have found none. The contents of the service plan are detailed by statute and the plan is to be prepared in conference with the children's parents if possible. TEX. FAM.CODE ANN. §§ 263.102–.103 (Vernon 2008). The service plan must be filed no later than forty-five days after the temporary orders. *Id.* § 263.101. Although the service plan is not itself a court order, the trial court's temporary order established that compliance with the requirements of the service plan was an action necessary to obtain return of the children. We conclude the temporary order complied with section 161.001(1)(O).

The Department made special accommodations to provide Mother the ability to comply with the requirements set out in the service plan. Even though the Department provided individual parenting classes to remedy Mother's lack of transportation to group classes, she did not attend all sessions or complete them. Mother also did not complete homemaker classes, attend marital therapy, attend group, notify the Department of changes in address, or attend visitation with her children regularly. Her attempts to comply with the plan, such as submitting to a psychological exam and attending some parenting classes, do indicate that she was aware of the plan. The temporary order specified that Mother comply with "*each* requirement set out in the Department's original, or any amended, service plan" (emphasis added). It is undisputed that Mother did not comply with *each* requirement of the order.

Mother additionally argues that the children were not removed because of abuse or neglect. Whether a child is removed for abuse or neglect is determined on a case-by-case basis. *See In re A.A.A.,* 265 S.W.3d 507, 515 (Tex.App.-Hous. [1st Dist.] 2008, pet. denied). Assuming without deciding removal "for the abuse or neglect of the child" is an element of 161.001(1)(O), the facts are sufficient to show that removal here was based on abuse or neglect.

First, when the children came in the care of the Department, one had impetigo, a staph infection, and her hair was falling out. Mother had not sought medical attention on behalf of the child. Second, the initial report received by the Department alleged negligent supervision. This coupled with the medical condition of the children and evidence of Mother's mental state is sufficient to establish neglect. *See In re A.C.,* No. 12–04–00264–CV, 2005 WL 2404108 at *4 (Tex.App.-Tyler Sept.30, 2005, no pet.) (mem op.) (initial report of neglectful supervision supported by facts giving " 'reason to believe' the allegations" established neglect by the parent).

Weighing the credibility of witnesses is within the sole province of the fact finder; we must give due deference to the fact findings and may not supplant the fact finder's judgment with our own. *See In re H.R.M.,* 209 S.W.3d 105, 108–09 (Tex.2006) (per curiam). Moreover, the evidence discussed above is not disputed. Applying the appropriate standards of review, we conclude the evidence is legally and factually sufficient to support the trial court's finding Mother's parental rights should be terminated under section 161.001(1)(O). We overrule Mother's first issue.

### 2. Best Interest

■■ Mother argues in her second issue that termination of her parental rights was not in the best interest of the children. Non-exhaustive factors to be considered by the court include the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, and

the parenting abilities of the parties seeking custody. *See Holley v. Adams,* 544 S.W.2d 367, 372 (Tex.1976) (setting out a non-exhaustive list of factors considered by the courts in ascertaining the best interest of the child).

The record indicates that Mother was severely depressed, had suicidal and homicidal ideations, and heard voices. Additionally, there is evidence that, at observed visitations with the children, she was unable to demonstrate proper affection for and attention to her children. The trial court could reasonably have found the facts to provide clear and convincing evidence that Mother, because of her mental illness, was unable to provide for her children's emotional and physical well-being and was unable to provide a safe environment, both now and in the future. The same facts could provide clear and convincing evidence to the trial court that Mother lacked the parenting abilities to enable her to retain the parental rights of her children.

These, along with others of the *Holley* factors, provided the trial court with sufficient evidence that termination of parental rights was in the best interest of the children. Evidence of just one factor may suffice as support of a finding that termination is in the best interest of the child. *See In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2002). Applying the appropriate standards of review, we conclude the evidence is legally and factually sufficient to support the trial court's finding that termination was in the best interest of the children. We overrule Mother's second issue.

3. Appointment of Department

██ Mother argues in her third issue that the trial court erred in not making a finding to support the trial court's appointment of the Department as sole managing conservator of the children. However, analysis of whether termination is in the

best interest of the child includes the issue of appointing the Department as sole managing conservator of the children. *See Navarrette v. Tex. Dep't of Human Res.,* 669 S.W.2d 849, 852 (Tex.App.-El Paso 1984, no writ). Because we have sustained the trial court's finding of termination to be in the best interest of the children, we view a finding to support the trial court's appointment of the Department as sole managing conservator of the children to be unnecessary. We overrule Mother's third issue.

### CONCLUSION

We conclude the evidence is legally and factually sufficient to support the trial court's determination that statutory grounds and the best interest of the children support termination of Mother's parental rights and that appointment of the Department was in the best interest of the children. We affirm the trial court's order.